The next case today is Brittany Irish et al. v. Detective Jason Fowler et al. Appeal number 201208. Attorney Lynch, please proceed. Good morning, Your Honor. I request permission to reserve one minute for rebuttal. Yes, you may have it. May it please the Court, at this stage the plaintiffs have climbed a substantive due process mountain that few in the circuit have been able to ascend. They convinced a trial judge, who previously granted a 12B6 motion, that the conduct of the officers was reckless, callous, or both, meeting what was— Believe me, we have spent a lot of time on this case, so there are basically two issues before the Court. First, the State says the evidence is insufficient to get to the jury on any claim of State-created danger with a failure to respond, which shocks the conscience. Secondly, there is the issue of qualified immunity and whether the law was clearly established. Perhaps you could deal with that clearly established question first, and after that, I'm going to ask you some questions on precisely what your causation theory is because it's a little unclear to me which of the officers' failures to act are part of your causation theory. Let's start with the clearly established point. Proceed. Yes, Your Honor. It was clearly established in July of 2015, as a matter of Federal jurisprudence, that State actors are constitutionally proscribed from engaging in affirmative acts that create or enhance the danger created by a third party. The centerpieces of those cases are that there is an affirmative act and that there's conscious shocking behavior. Before you tell us about the centerpiece, tell us what cases you're referring to. Yes, Your Honor. Let me start it this way. Are you including any Supreme Court case in that? The Descheny is included in that. Descheny? Okay. That is the progenitor for the nine circuits that have adopted the State- That's fair. How about First Circuit? With respect to the First Circuit, we have had a significant evolution in the constitutional jurisprudence since the decision in SOTO in 1997 that evaluated the conduct that had occurred in 1991. We had Rivera that talked about deliberate indifference that rose to the level of being conscious shocking. That's an element of State-created danger. We also have ... Of course, that predates the conduct of the officers here. We had the Maldonado decision that talked about affirmative acts and also talked about ... We also have Marrero Rodriguez from 2012 that put officers on notice about policies that are shedding light on whether or not their actions, their affirmative actions, could rise to the level of- Did any of those cases explicitly adopt the State-created danger theory? They don't expressly adopt it and that's- No, I didn't think that they did, but go ahead. I'm just trying to get at what the ... I'm not hostile to your position. I'm just trying to get at what you say the source of this clearly established law is. If the law is clearly established, that means there's got to be an reasonable officer would recognize. Sure. The flow chart that I would point to the officers would simply be DeShaney and then we have the robust consensus of the nine circuits and the various cases that I've cited in my brief. Now, that consensus I thought was seven to two. Nine to two. Nine to two, okay. Of the nine cases, how many of them adopt the same theory of State-created endangerment? There are slight differences between some of the circuits, but the very elements- The differences are more than slight in some cases. I guess I don't- You have to go all the way from a two-part test to a six-part test to whether there has got to be some kind of condemnation by some ranking State authority. Your Honors, the common elements that go all the way through those cases are the affirmative act and secondly, the conscious shocking behavior that runs throughout all of those cases. That's helpful. You're positing that it's that irreducible minimum which was clearly established jurisprudence when these officers acted? Yes, Your Honor. Okay. I'm just trying to get where you're coming from in mind. That's helpful. Thank you. I would note that this is just not a consensus, but a robust consensus. What is the klaxon call that the officer should have heard? One question just to refine that because I think the summary makes sense to me about conscious shocking. The difficulty I have is that conscious shocking, I suppose in some extreme case, would be evident and clear to anyone that something was and maybe the claim is simply that this is that. The slight difficulty here, it seems to me, for you, is that after the affirmative act of, which I assume is the placing of the phone call that creates the danger. After that, we have a failure to act. And the question is whether it was clearly established that the kind of failure that was present here is conscious shocking. And that is a little less clear to me because I think what's implicit in your contention is that if you could show deliberate indifference in the face of the created danger, that would be conscious shocking. Is that a fair account of your position? Well, Your Honor, our position is this, what runs through all of the circuit cases, and in fact, with the cases where you have examined the deliberate indifference, is that there has to first be the affirmative act. And that's what triggers the duty. After that, just the affirmative act is not itself conscious shocking. The conscious shocking behavior then comes after that, right, in the form of the deliberate indifference in response to the created danger. Is that right? That's part of it, but the activity, Your Honor, as the district court found that antedated the phone call, what the knowledge that the officers were chargeable, one of the, for instance, they knew before they placed this phone call that there was... Let me ask it a different way. Sure. You're saying that whatever knowledge they had beforehand and whatever danger they created, they were deliberately indifferent to it afterwards. Is that right? That's correct. And I guess my question is, is it clearly established that merely being deliberately indifferent to it is conscious shocking? Yes, you said so in Rivera, where you said deliberately indifferent behavior could suffice, and I believe that was citing back to Kennedy case from the Ninth Circuit, which was, again, the essence was the affirmative act and then the conduct immediately before and after. But the difficulty there is, as you were conceding, we hadn't definitively endorsed the doctrine in Rivera. So the way I think that the flow chart, as you put it, which I think is a good way to think about it, you're relying on the consensus that can be derived from the nine other circuits, that there is such a doctrine, notwithstanding the First Circuit has never clearly endorsed that doctrine. And that's, I understand, is an allowable way of thinking about how something can be clearly established. To do that, I guess my question is, is it clear from those nine circuits that deliberate indifference in the face of the danger is conscious shocking? Because I would think it would have to be clearly established that that's the case from those circuits in order for your position to be clearly established. But maybe that's wrong. But that's my question. I agree. I agree with that position in that the common thread in all of those cases is the deliberate indifference. And that's clearly established. Five minutes remaining. In that case law. Counsel, I read the case law the same way you did. So given the time we have, I identify several causation theories from your brief. One is that they didn't do a background check on Mr. Lord, which would have told them he had, he was on probation and he could have been picked up right away. They also did not do a criminal history check, which would have told them that there were prior sex assault and he was required to register as a sex offender. So right off the bat, they don't do things. Then they do take the affirmative step of calling him, not apprehending him, leaving a phone message on his cell phone and making no effort at that point to apprehend him. Your client then has a number of exchanges with the police, telling them of increasing evidence that he is going to kill someone and it may well be her, her boyfriend, her family, her children. That the response to that was inadequate. As I understand it, you are also, but I'm not clear on this, relying on their affirmative advice, stay where you are after there was a fire in the barn and the failure to tell her as soon as they knew that it was likely he was 15 minutes away and had just stolen two guns, which he then uses to murder the boyfriend, injure the mother, and cause her to be a victim. Can you lay that out for us, please? I can, Your Honor. The district court in its detailed opinion talked about the different circuits and the different elements, but found the common threads that I've discussed just a moment ago with regard to the direct action and the deliberate indifference, and looked at the third circuit elements as being the most common. The third circuit tests are very stringent. One of those tests, Your Honor, you mentioned the word causation, foreseeable and direct was the language that the district court used from that circuit. He concluded that especially after the barn had been burned down, and Brittany Irish reported that it was suspected that Anthony Lord had done that, that they were on notice that Mr. Lord was going to make good on the threats that he made about cutting somebody's throat, about dragging them into the woods, and that his wrath was going to be directed at the Irish's. He concluded that that was a direct and foreseeable consequence. Judge Woodcock also pointed out that there was an argument that was made by the state that the phone call, the recording of the phone call, didn't mention the sexual assault allegation, but the court concluded that it was quite reasonable based on the one-on-one nature, Yes, well, that's plainly so, and he lies about it later, but let me go back to the only time the police are with her other than when she goes to the police station or the parking lot of the police station to meet them and turn over her clothes. The only time they are with her is after the fire, when they show up at the house. She asks for protection. They don't leave anyone there, right? They go off, and she gets increasingly worried, and her mother calls the She wants to drive to the police station, and they say they do two things, but mind you, it's not the two defendants who give this advice, though they may be in the background. We don't know. We don't know from this record. They say, do not leave your house. You are safer there, and we have officers in the vicinity when, in fact, the record suggests that that was not true, that the officers, having put in a very long day, had gone home, and nobody was there close enough to have provided her any protection. Your Honor, having created the danger with the phone call and with their knowledge of forethought, and then subsequent, as the court found the statement that somebody is going to die tonight was a type of influence, they then abandoned this plaintiff without protecting her after creating the very danger that she had warned them about, and it came to be true. So, just one more fact. At some point, they put out, I've forgotten the name of the warning, telling other police and troopers, this guy is dangerous. If you stop him, be aware he's dangerous, but at that point, they still have not provided her with protection. I want to draw your attention to the two points on the timeline that are important. That call to the law enforcement to caution and hold was at about 10 p.m., about two hours after the barn burned, and it wasn't until 1138, 42 hours into this investigation, that they talked to the probation officer, who has an incredible range of holding authority, to lay out the probation officer said, arrest him. So, and then they went home. They went home, the two detectives. I am mindful of the hours that they put in, but once you create a danger of this kind of constitutional magnitude, proverbially, you have to put out the fire. I interrupted Judge Barron. I think he had a question. I understand the disturbing facts, and with respect to the deliberate indifference point, I understand the argument as to why there's at least a jury question as to whether they were deliberately indifferent. I also understand that it may be the case that every circuit has recognized deliberate indifference to be a necessary component. In other words, you at least have to show deliberate indifference in order for any state-created danger claim, ultimately, to succeed in showing its constant shocking behavior, but I want to return to the reference that Judge Selye made to you about at least one circuit that has required official state condemnation of the conduct, because I'm not quite sure that I'm seeing, or maybe you can help me, how we could conclude that the nine circuits have established a consensus that deliberate indifference is sufficient in the face of evidence of creating the affirmative danger to show that it's constant shocking. Do you follow that? That's the part where I'm not as sure that I'm reading the cases to be as clear as you read them to be. I do follow your question, and I would just direct the Court's attention to, again, two more critical pieces of evidence. One is the IRT investigation that concluded that there may have been a violation of the M4 protocol, and second, the M4 protocol itself, which embodies the government's position is because it is in a state regulation, it doesn't rise to constitutional magnitude, but a matter that's of local concern, municipal concern, county concern, state concern, can simultaneously be a federal concern, as we've seen with domestic violence. Domestic violence issues and the federalization of it is not a new concept. It's been around since 1994, and that M4 shows that there is a condemnation by the state police of not protecting domestic violence, and more particularly, not taking their complaint seriously. I do a lot of family law, Your Honors, and a lot of criminal law on the local level. It's very rare that you have a victim that does not have mixed feelings. Sometimes they even love the abuser still. So the law enforcement diminished and didn't take the case as serious as the courts have found. They allowed their skepticism to color the claim, and that's expressly prohibited by the M4 protocol and the training. To draw enough... I'm sorry. No, finish. Go ahead. You know, there's a quote in my brief that heads defendants win, tails plaintiffs lose, and I talk about it being a Assyrian staircase. That's one of the quotes from a Fifth Circuit, and basically what the government always argues is this exact case has not been in this circuit before, and as you said in Maldonado, which again predates the activity of these officers, it's in 2009, and you emphasize it was underlined in the opinion just because this court has not spoken on the precise facts does not mean the constitutional principle does not exist. For instance, the continent of North America was here before someone said, there's the continent of North America. This constitutional principle existed before the circuit simply announces the nomenclature, the doctrine state created danger. Under the district court's ruling, Your Honors, no matter how egregious Officer Perkins and Fowler's behavior was, qualified immunity would have been granted every time because this court had not expressly used the words state created danger and we adopt it now, and that just can't stand constitutional scrutiny. So going back to the question on condemnation, if something more than named the sergeant, I take it the detectives reported to the sergeant, is that correct? He did. And it was the sergeant who made the determination in the end that no one would be sent to this woman's house to protect her. He told the detectives to not, that to tell her that there was not manpower. If you look in the district court opinions though, the court found that they had a separate responsibility. I believe the language was do something, anything, once they had created the danger to help and held that to be a failing of the detective Perkins and Fowler. I allowed Sergeant Crane out of this case because I wanted to be true to the elements that this court has previously adopted in its discussion and analysis that you have to have an affirmative act. And as in this, in this last term, you decided the case of Ali Absidmon, that was the young boy that drowned at rank. Yes, I know. I've written many of those decisions. A very tragic case. However, you said that that case was different than Irish when they tried to draw a comparison. The Ali Absidmon case is a complete failure to act. There was no affirmative act. The reason why Sergeant Crane is not part of this case any longer is because I agree with the district court that you must have some bright line tests, affirmative act, conscious stalking behavior, because I know the court is trying to strike a balance between avoiding a reservoir of tort law to satisfy constitutional claims. That's where Ali Absidmon lands. It's a tort case. That's where it should be. And then a case where there's an affirmative act, where there's a straight state created danger. I'm not sure. I have one more question. As to the desperate call, I don't feel safe here from the mother and similar calls from Kimberly Irish. I don't feel safe here. I want to load my family into the car. He's burned down my barn. I want to come close to the police headquarters. Maybe that'll stop an attack. And she is told by someone unidentified, but obviously a state police employee, no, stay where you are. And we have officers in the vicinity who can protect you. Okay. Is there enough evidence for a jury to draw an inference that that dispatcher had information from the two defendants in this case, which led to that advice? There's enough for the jury to draw that inference. But if I were to discuss it, for instance, if I were teaching a class on trial strategy, I would say 90% of the focus should be on what Perkins and Fowler did after they created the danger and the knowledge that they're chargeable with. The information you provided, your honor, is factually admissible to the jury, and I think is the spice that goes on the elements of the case. Okay. Further questions from my colleagues? No. No. Thank you. We'll hear from your opponent. Attorney Lynch, please mute. Attorney Taub, please unmute. Judge Lynch, with your permission, Attorney Taub may proceed with argument. Yes, please do. Good morning, and may it please the court. So I'll just jump right into the issue of the clearly established prong of qualified immunity. And I think I want to start by addressing this issue of a consensus of cases in other circuits. And it's certainly true that there doesn't have to be a case from this circuit to make a right clearly established, and that a consensus of cases in other circuits can sometimes satisfy the standard and demonstrate that a right is clearly established. But I think there are a couple significant points that I'd like to make. First, in this case, we have two circuits that have expressly rejected the theory of a state-created danger claim. So yes, there are nine courts that have addressed it and accepted it, and two courts that have rejected it. And we're not aware of any case in which a court has found a right clearly established just based on the fact that there was a majority of circuit cases moving that way when there were other circuits that had rejected the theory. And I just want to point the court to Pearson versus Callahan from the Supreme Court, where the court said, if judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy. So we would say that in this case, yes, there are many circuits that have adopted the theory, but there were two that rejected it. And we think almost by definition, that means it wasn't clearly established. Okay, suppose we disagree with you on that. Can we get to one of the arguments that you made? The law is not clearly established because there is no case that is sufficiently close to this one, which would have told the officers involved here that there was a constitutional principle involved. In fact, there are two or three cases rather like this one. But as a legal proposition, I believe that argument is simply wrong. You do not need a case identical on its facts to find the law is clearly established. I say that just to clear that debris out of the way. So let's get to the content. Assume that there is a duty here that runs toward the plaintiff. What is the content of the test that is applied here? Well, I guess I'm not sure how to answer that question, Your Honor, because I mean, this court has never adopted the state-created danger theory. Yeah, okay, you can have your wing and a prayer. But let's go to, is deliberate indifference that shocks the conscience, in your view, is that sufficient? And if you think it is not sufficient, what is your source in the case law on that? Well, I mean, I agree with Mr. Lynch that in the Rivera case, this court said that when officers have time to reflect and make reasoned decisions, sometimes deliberate indifference can satisfy the shocks, the conscience standard. That said, and I really don't want to lose sight of the qualified immunity analysis, because if the court has concerns about the analysis, and I definitely would want to address them, but I don't see that there's any case. First of all, I completely agree that it doesn't have to be a case on all fours. You don't have to have some sort of identical set of facts, but all the plaintiffs have done is cited to a bunch of cases from other circuits that just at the most general level possible have said that there is a substantive due process right to be not subject to state action that creates a danger. But Mr. Taub, I have some sympathy for your argument, but those cases, although they're different from circuit to circuit, what I was inquiring about with your brother and now ask you is isn't it true that there is throughout those cases an irreducible minimum of facts which all of those circuits, save for I think it's the second circuit that requires condemnation, put that in a separate bucket for the time being, but which all of the cases other than that seem to require as a condition for triggering the state created danger doctrine. Yes, your honor, I would agree that. And if the facts of this case meet that irreducible minimum or put more precisely, if there is sufficient evidence in the record from which a jury could find that the facts of this case meet that irreducible minimum, it would seem to me that the case for saying that the law was clearly established is considerably stronger than if the answer to that same query is no. So I think if I understand your question, your honor, I mean, what I view this consensus of cases as being is just broad recognition that at And so I really view it as nothing more than court saying. What's the content of that state created danger? What's the least common denominator that runs through all those cases that recognize the state created danger doctrine that you just said you understand them to recognize? So I think the least common denominator is that there has to be some sort of affirmative conduct on the part of state actors that creates or intensifies a danger to a third party. And then the state actors, so that gives rise to a duty to protect. And then the state actors exhibit conscious shocking behavior and not protecting the person from that arrest. And on that last score, the conscious shocking behavior, is there a irreducible minimum or at least common denominator that those circuits use to assess whether somebody has engaged in conscious shocking behavior? For example, is deliberate indifference capable of constituting conscious shocking behavior in the eyes of all those courts? I have to apologize, your honor. I haven't looked at those cases closely enough and recently enough to be able to answer that question. And I apologize for that. But the other point that I want to make is that this is really, this consensus would be sort of equivalent to there being a consensus that using unreasonable force in the case of an arrest is a violation of the Fourth Amendment. It's at the broadest level possible. If deliberate indifference in the face of the danger was recognized by all of those courts to be conscious shocking, that'd be one level down from the higher level you were just at. I think that the issue in this honor, in this case, your honor, is going back to the Rivera case, where there we have a case where this court said that those particular actions that police and prosecutors took weren't sufficient to give rise to a state credit cause of action. Now, I've obviously looked very carefully many times at this court's decision in the Irish case when it was up last time around. And my interpretation of what this court was is that we were reading Rivera too narrowly. And that while maybe just by themselves, law enforcement actions can't give rise to a state credit danger claim, that might be different when they're used in an unreasonable way or in some way that's just plainly unreasonable or deliberately indifferent or whatever the standard is. So my understanding of what this into, not just were these law enforcement tools, but were they used in some clearly inappropriate way? But I think the problem with that analysis is that, and that's a fair qualification, but the problem is that these officers never had the benefit of that qualification. And I just want to add that the district court, the first time around, never predicted that that qualification would be added to Rivera. That qualification isn't very hard to predict. If you go back to the seminal qualified immunity cases, the Supreme Court said right at the very start in Malley v. Briggs that the qualified immunity doctrine is not there to protect officers who act in a plainly incompetent manner. So it's not hard to predict that as far as the unreasonable creation of a state-created danger, that officers who act in a plainly inappropriate or incompetent manner could be found by a jury to violate that duty. Well, respectfully, Your Honor, I would disagree with that because I think what we have here is we have two decades of this court discussing but never adopting the state-created danger theory. And then I think in the one case from this circuit, which I think comes closest to the facts at hand, we have this court expressly rejecting the… In 1991, as your brother says, the law has evolved since then. I have a couple of questions. The way I read your brief, the only arguments you presented to us on qualified immunity are the First Circuit has never to date flatly stated that we would use the doctrine. That was the rationale that the district court used. The second thing you argued was there are no cases sufficiently like this to have clearly established to the officers. I've told you what I thought of the second one. As to the first one, I'll come back to that. But you did not bother to argue in your brief to this court that the facts do not establish deliberate indifference as to the qualified immunity point. You did argue earlier that the trial judge was wrong in saying that there was a jury issue here as to conscience shocking behavior. So let's go back to the consensus of the circuits and deliberate indifference may well be enough if it shocks the conscience, especially if there is time to reflect. This is not an armed robbery with the police having to make split second judgments. This was an investigation that took place over a number of hours. There was no absence of time to reflect as to what the appropriate steps were to be taken. There was also no absence of time to reflect when her request for protection was passed along. There was also no absence of time to reflect in the close to two hour delay in telling her that no protection would be afforded her. Do we agree on that point? Do we agree on the two hour delay? No, that this is not the split second judgment situation as to any of the actions at issue. Yes, your honor, we can agree with that. All right. So there's only about two minutes left. Okay, thank you. So I'm not sure what's the most important thing at this point, but I just want to point out again that the Rivera case, and that was the case that I was referring to, not the Soto versus Flores case. But I think as the district court judge recognized when he dismissed this case the first time, any reasonable officer reading that decision is going to understand that this is not a constitutional violation. So if you're going to deny qualified immunity here, you're essentially going to be holding these officers to a standard that they should have been better able to predict the law than a district court judge was. So that's just point one. Let me just put the question this way and see if this helps. Suppose we agree that we were to conclude that given the consensus of other circuits, it was clearly established that you could be liable for a substantive due process violation on a state created danger theory. Suppose we agreed that a common element of that theory is an affirmative act and that a jury could find based on the phone call that the affirmative act occurred here. And suppose further we found that the evidence supported the conclusion that notwithstanding that they created that affirmative danger, they were then deliberately indifferent to the danger that they had created. Why, if we concluded that all of that was true, would the officers here still be entitled to qualified immunity? What are you relying on as precedent for the conclusion that all of that being true is still not enough to show that it's clearly established that there was a substantive due process violation? So, I mean, I think the first point is that it's not just enough to establish that affirmative conduct can lead to a substantive due process violation for qualified immunity. There has to be some corollary between the actual facts that are present and the other decisions. So, I think that's point one. I think point two is that in the Rivera case, again, which is the closest case, the court didn't apply it there. I think point three is that even if you were going to find that deliberate indifference is, I mean, even if we were able to get all the way past all these hurdles, I'm sorry, may I continue? Finish, please. So, even if the court was to skip over all these other obstacles and find that despite there being a split in the circuits and despite that this court has never embraced the theory, all of that, that we're going to get to sort of this deliberate indifference test, there's nothing in the record that would demonstrate that these officers were deliberately indifferent. When they got the phone call from Brittany Irish that... That's the very point I looked for in your appellate brief and it isn't there. So, what are we supposed to do? Well, Your Honor, we did talk about the deliberate indifference standard in our brief and... Only in the context of no jury could possibly find that. And if the trial judge is affirmed on that, you simply did not argue any causation from facts theory that these officers could not be deliberately indifferent. Underlying this is the question of whether the jury is ever going to have the opportunity to answer those questions. You and the officers might very well win should the jury get those questions, but that's not the issue before us. Well, we did address deliberate indifference, and we explained that these officers didn't simply ignore the phone call when they heard that the barn was burning. They immediately went to the scene. They immediately summoned a canine unit. They immediately put out an all points bulletin. And they immediately left her there alone. That's not true, Your Honor. They were searching for Mr. Lord until 3 a.m. And I just want to say that there's... I'm sorry, are you telling me they left an officer there to protect her and her family? No, they did not leave an officer there, Your Honor. But also, that was their supervisor's decision to not post an officer there. And I also want to point out that, yes, they didn't do the measure of protection that the plaintiff was asking for. And obviously in hindsight, with perfect 2020 hindsight, clearly it would have been the right thing to do to post an officer there. But they didn't do that thing. Instead, they took other measures. And yes, there was a tragedy because they didn't post an officer there, but I don't think that rises to deliberate indifference. They were taking other measures. They didn't just ignore the risk to the plaintiff. I know my time is out, so unless you have any other questions. My colleagues, do you have any further questions? I'm content. Thank you. Judge, there's rebuttal from Attorney Lynch. His name is Lynch. Yes, Judge, I'm sorry. Attorney Lynch. All right. Attorney Lynch, proceed. Yes, Your Honor. As I return back to the panel decision in Irish 1, it wasn't just a remand. It was a remand with instruction that discovery be done on relevant facts. Quote, the discovery should include facts on whether there was any departure from established police protocol or training. Later in the decision, the court stated, if discovery reveals that the officer's actions violated accepted norms of police procedure, or they acted despite foreseeing the harm to Irish, it may strengthen the plaintiff's argument that the officers exacerbated the danger that Lord posed. It may also speak directly to whether the officers acted in deliberate indifference to Irish's safety, so much so that their conduct shocks the conscience. I believe that as counsel for the plaintiffs, we followed the instruction, discovered that M4 was directly on point and said what should be done in all domestic violence cases, but especially alerted them to what they should do, and all the more important, when they had engaged in affirmative act that had created the danger. Thank you. Any further questions? None. No. Thank you. Well argued on both sides. The clerk will close the session of the court, and I will have further communications with my colleagues. Okay. Thanks. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this Honorable Court. Counsel, you may now disconnect from the meeting.